No. 96-344

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


DANIEL OROZCO,

Plaintiff and Appellant,

v.

RICK DAY, Director off the Department of
Corrections and Human Services, MIKE
MAHONEY, Section Warden, MYRON BEESON,
Section Warden, CANDYCE NEUBAUER,
Classification Manager, DAVE LANNING,
Unit Manager, MONTANA DEPARTMENT OF
CORRECTIONS AND HUMAN SERVICES, MONTANA
STATE PRISON.

Defendants and Respondents.


APPEAL FROM:   District Court of the Third Judicial District,
In and for the County of Powell,
The Honorable Ted L. Mizner, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

Daniel Orozco, Pro Se, Deer Lodge, Montana

For Respondents:


Lois Adams, David L. Ohler, Diana P. Leibinger,
Attorneys at Law, Department of Institutions,
Helena, Montana

Submitted on Briefs: October 10, 1996

Decided: March 10, 1997
Filed:

_____
Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Daniel Orozco (Orozco), appearing pro se, appeals from the opinion and order of the Third Judicial District Court, Powell County, dismissing his complaint for failure to state a claim upon which relief could be granted. We affirm in part, reverse in part and remand for further proceedings consistent with this opinion.

We restate the issues on appeal as follows:

1. Did the District Court err in concluding that the Department of Corrections and the individual defendants are not "persons" under 42 U.S.C. 1983?

2. Did the District Court err in concluding that the individual defendants have qualified immunity?

Factual and Procedural Background

Orozco is an inmate at the Montana State Prison (MSP). On March 26, 1995, Unit Manager Dave Lanning notified Orozco, via a document entitled "Due Process Notifications," that an ongoing investigation indicated that he was involved in a conspiracy to traffic drugs within the MSP. The notice further stated that a classification hearing would be held to address Orozco's custody level and job assignment and that Orozco could present evidence on his own behalf at the hearing. On the same day, Orozco was placed in temporary lock-up in maximum security for investigation purposes pursuant to MSP Policy No. 15-002.

Orozco was not provided with a hearing investigator to assist in his defense at the classification hearing held on March 28, 1995. As a result of the hearing, Orozco was reclassified to maximum security and was unable to continue earning thirteen days per month good time credits.

Orozco subsequently filed a 42 U.S.C. 1983 civil rights action against Rick Day, Director of the Department of Corrections; Mike Mahoney, Section Warden; Myron Beeson, Section Warden; Candyce

Neubauer, Classification Manager; Dave Lanning, Unit Manager for Close Unit One; the Department of Corrections (Department); and the MSP. Orozco requested a declaratory judgment that the defendants had violated his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution by failing to assign a hearing investigator to assist in his defense during the classification hearing which could, and did, result in his inability to continue to earn thirteen days per month good time credits. He also sought a preliminary and permanent injunction requiring the defendants to adequately train and supervise personnel in established policy and discipline personnel for failure to comply with such policy; to place him back in the general prison population; and to credit him with thirteen days per month good time which was lost due to his placement in maximum security. Finally, Orozco requested an award of money damages against each of the defendants.

The defendants moved to dismiss Orozco's complaint pursuant to Rule 12(b)(6), M.R.Civ.P., for failure to state a claim upon which relief could be granted. The District Court held a hearing in December of 1995 and, thereafter, granted the defendants' motion to dismiss. Orozco appeals.

Additional facts are set forth below where necessary to our resolution of the issues.

## Standard of Review

The District Court dismissed the entirety of Orozco's complaint pursuant to Rule 12(b)(6), M.R.Civ.P. In evaluating a Rule 12(b)(6) motion to dismiss, courts are required to construe a complaint in the light most favorable to the plaintiff. The court should not dismiss the complaint unless it appears that the plaintiff is not entitled to relief under any set of facts which could be proved in support of the claims. Loney v. Milodragovich, Dale & Dye, P.C. (1995), 273 Mont. 506, 509, 905 P.2d 158, 160.

The issues Orozco raises on appeal assert error in the District Court's conclusions of law. We review a district court's conclusions of law to determine whether the court's interpretation of the law is correct. Werre v. David (1996), 275 Mont. 376, 385, 913 P.2d 625, 631.

## Discussion

1. Did the District Court err in concluding that the Department and the individual defendants are not "persons" under 42 U.S.C. 1983?

Orozco based his claim against the Department and each individual defendant on 42 U.S.C. 1983, which provides:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other

person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

In order to prevail on a 1983 claim, the plaintiff must establish:
(1) a violation of rights protected by the [United States] Constitution or created by federal statute, (2) proximately caused (3) by conduct of a "person" (4) acting under color of state law.

Crumpton v. Gates (9th Cir. 1991), 947 F.2d 1418, 1420. The District Court concluded that the Department and the individual defendants are not "persons" within the meaning of 1983. Orozco contends that the court erred.

Department of Corrections

The United States Supreme Court has held that municipalities and local government units are among those "persons" to whom 42 U.S.C. 1983 applies. See Monell v. New York City Dep't of Social Serv. (1978), 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611, 635. States and other governmental entities, on the other hand, are considered "arms of the state" and, as a result, they are not "persons" within the meaning of 1983. See Will v. Michigan Dep't of State Police (1989), 491 U.S. 58, 70, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45, 57. The exclusion of states and "arms of the state" from the term "person" contained in 1983 is based on the immunity from suit provided to states by the Eleventh Amendment to the United States Constitution. See Will, 491 U.S. at 66.

The Department is an entity within the executive branch of government in the State of Montana (State). See 2-15-102(4) and 2-15-2301, MCA. Thus, it is a governmental entity which is considered an "arm of the state" and not a "person" for 1983 purposes. See Will, 491 U.S. at 70.

Orozco argues that 2-9-305(2), MCA, required him to join the Department in this action and, therefore, that the District Court erred in concluding that it was not a proper 1983 defendant. The Department did not respond to Orozco's argument but, in any event, Orozco misreads the statute.

Section 2-9-305(2), MCA, requires governmental entity employers to defend and indemnify employees sued for misconduct committed in the course and scope of the employees' office or employment, including employees against whom a 1983 action is brought. It does not refer to, or require, joinder of a governmental entity when an employee of that entity is sued. See 2-9-305(2), MCA. Although the heading of 2-9-305, MCA, contains the language "Governmental entity to be joined as

defendant," nothing in the text of the statute relates to or supports that portion of the heading.  We have held that the text of the statute takes precedence over the title in matters of statutory interpretation.  See ISC Distrib., Inc. v. Trevor (1995), 273 Mont. 185, 196, 903 P.2d 170, 177.

Orozco's contention that, under  2-9-305(2), MCA, the Department was a proper party in his  1983 action is also without merit.  The statute addresses actions brought against employees; it does not relate to the propriety or impropriety of suing governmental entities, and the law is clear that  1983 does not apply to arms of the state.  See  2-9-305(2), MCA; Will, 491 U.S. at 70.

We hold that the District Court correctly concluded that the Department is not a "person" within the meaning of 42 U.S.C.  1983.

### Individual Defendants

State officials sued for money damages in their official capacities also are not "persons" within the meaning of  1983, because the suit is not a suit against the state officials, but is a suit against the officials' offices.  Therefore, an action for money damages against a state official in his or her official capacity is no different than a suit against the state itself.  Will, 491 U.S. at 71.

State officials are "persons" within the meaning of  1983, however, if sued for money damages in their individual capacities for actions taken under color of state law.  See Trout v. Bennett (1992), 252 Mont. 416, 425, 830 P.2d 81, 85-86 (following Hafer v. Melo (1991), 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301).  Orozco argues on appeal that, because he sued the individual defendants in their individual capacities, the District Court erred in concluding that the individual defendants are not "persons" under  1983.

Generally, where state officials are sued for damages under  1983, it is presumed that the officials are sued in their individual capacities.  See Shoshone-Bannock Tribes v. Fish & Game Comm'n, Idaho (9th Cir. 1994), 42 F.3d 1278, 1284 (citation omitted).

Any other construction would be illogical where the complaint is silent as to capacity, since a claim for damages against state officials in their official capacities is plainly barred.

Shoshone-Bannock Tribes, 42 F.3d at 1284.  In cases where the complaint does not clearly specify whether state officials are sued in their individual or official capacities, the course of the proceedings will indicate the type of liability sought to be imposed.  Larez v. City of Los Angeles (9th Cir. 1991), 946 F.2d 630, 640 (citation omitted).

Here, Orozco's complaint does not clearly indicate in which

capacity he sued the individual defendants. The caption of the complaint, in which the individual defendants' names are followed by an identification of their positions within the Department or at the MSP, suggests that Orozco sued them in their official capacities. In addition, the complaint contains a section entitled "DEFENDANT'S [sic]" which sets forth the name of each defendant and his or her position, followed by a description of the defendant's official duties.

On the other hand, Orozco's complaint also contains indications that Orozco intended to sue the individual defendants in their individual, rather than their official, capacities. For example, the complaint asserts that the Eleventh Amendment does not bar actions against officials who, acting under color of state law, deprive a plaintiff of constitutionally protected rights. This assertion appears to reflect an awareness by Orozco that, while Eleventh Amendment immunity applies to state officials sued in their official capacity (see Will, 491 U.S. at 70-71), it "provides no shield for a state official confronted by a claim that he had deprived another of a federal right under the color of state law" (see Scheuer v. Rhodes (1974), 416 U.S. 232, 237, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90, 97).

Orozco's complaint also states that the individual defendants are "not entitled to the protection of the good faith immunity." Such a defense for the individuals named in Orozco's complaint only becomes an issue, however, when they are sued in their individual capacities, because personal immunity defenses may be asserted only by officials sued in their personal, rather than their official, capacities. See Hafer, 502 U.S. at 25. Thus, the reference in Orozco's complaint to personal immunity defenses suggests an intent to sue the defendants in their individual capacities. Otherwise, inclusion of such a reference would be meaningless.

Orozco's complaint further states that the defendants "acted with malicious intent, outside [the] scope of their authority." In this regard, Orozco's complaint is similar to those in Scheuer, where the plaintiffs alleged that the defendants acted intentionally, recklessly, willfully and wantonly either under color of state law or outside the scope of their authority. See Scheuer, 416 U.S. at 235. Faced with such allegations in the context of a trial court's decision to dismiss the complaints at the pleading stage, the United States Supreme Court concluded that the plaintiffs' allegations demonstrated that they were seeking to impose individual liability on the named defendants. Scheuer, 416 U.S. at 238.

Orozco's complaint does not clearly and consistently establish whether he is suing the individual defendants in their official or individual capacities. We conclude, however, that a fair reading of the complaint suggests an intent by Orozco to sue the individual defendants in their individual capacities. We hold, therefore,

that the District Court erred in concluding at the pleading stage of this case that the individual defendants were not "persons" under 42 U.S.C. 1983.

2. Did the District Court err in concluding that the individual defendants have qualified immunity?

The District Court also concluded that the individual defendants were entitled to qualified immunity. Orozco contends that the court erred in this conclusion as well.

We recently discussed qualified immunity at length in Boreen v. Christensen (Mont. 1996), 930 P.2d 67, 53 St.Rep. 1450. Qualified immunity shields government officials performing discretionary functions from civil damages "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Boreen, 930 P.2d at 70 (quoting Harlow v Fitzgerald (1982), 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396). "Qualified immunity 'gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'" Boreen, 930 P.2d at 70 (quoting Hunter v. Bryant (1991), 502 U.S. 224, 229, 112 S.Ct. 534, 537, 116 L.Ed.2d 589, 596).

Courts apply a two-pronged test in determining whether an official is entitled to qualified immunity. First, the court must determine whether a clearly established right has been violated; and second, the court must determine whether a reasonable person or official would have known that his or her conduct violated that right. Sacco v. High Country Indep. Press (1995), 271 Mont. 209, 216, 896 P.2d 411, 415 (citation omitted).

The threshold inquiry in applying the qualified immunity test, therefore, is whether the constitutional right allegedly violated-- here, an alleged right to due process arising from a liberty interest in accumulating good time credits--was clearly established at the time of the conduct giving rise to the litigation. See Boreen, 930 P.2d at 70. Relying on Remington v. Dep't of Corr. & Human Serv. (1992), 255 Mont. 480, 844 P.2d 50, the District Court concluded that Orozco did not have a liberty interest in good time credits which implicated due process concerns.

In Remington, inmate Daniel Remington petitioned this Court for habeas corpus relief, contending that the Department violated his right to due process by denying him good time credits for successfully completing correspondence courses. Remington, 844 P.2d at 52. We noted that, if a liberty interest in good time credits exists, due process concerns arise in order "'to insure that the state-created right is not arbitrarily abrogated.'" Remington, 844 P.2d at 52 (quoting Wolff v. McDonnell (1974), 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935, 951). In determining whether a liberty interest existed, we stated that

[a] liberty interest is created when the legislature

expressly mandates to an agency the performance of some activity to be carried out within specific parameters which include definitions, criteria, and mandated "shalls."

Remington, 844 P.2d at 52 (citing Connecticut Bd. of Pardons v. Dumschat (1981), 452 U.S. 458, 466, 101 S.Ct. 2460, 2465, 69 L.Ed.2d 158, 166). We then scrutinized 53-30-105, MCA (1991), which authorized the Department to adopt rules concerning the dispensation of good time credits. We concluded that 53-30-105, MCA (1991), did not contain definitions, criteria or mandates for the good time rules it directed the Department to adopt and, as a result, the Department "has virtually unfettered discretion in establishing the rules which will govern the dispensation of 'good time' credits to prisoners." Remington, 844 P.2d at 52. In light of that virtually unfettered discretion, we held that MSP inmates do not have a liberty interest in good time credits which raises due process concerns. See Remington, 844 P.2d at 53.

Subsequent to Remington, the United States Supreme Court changed its focus in defining state-created liberty interests in Sandin v. Conner (1995), 515 U.S. ___, 115 S.Ct. 2293, 132 L.Ed.2d 418. The Supreme Court reflected that, post-Wolff, it had departed from determining whether the state had created an interest of "real substance" and focused, instead, on whether states had gone beyond issuing mere procedural guidelines and used "'language of an unmistakably mandatory character' such that the incursion on liberty would not occur 'absent specified substantive predicates.'" Sandin, 115 S.Ct. at 2298 (citation omitted). Noting that the post-Wolff "mandatory language/substantive predicate" focus had served as a disincentive for states to codify prison management procedures in the interest of uniform treatment and led to the involvement of courts in the day-to-day management of prisons, the Supreme Court concluded that it was time to return to the "interest of 'real substance'" approach to due process established in Wolff. Sandin, 115 S.Ct. at 2298-2300.

In Wolff, a Nebraska prison inmate sued under 1983, alleging that prison disciplinary proceedings which could result in the loss of good time violated the Due Process Clause of the Fourteenth Amendment. Wolff, 418 U.S. at 553. Several Nebraska statutes were relevant to whether a due process liberty interest existed in good time. The first required good time allowances in specified amounts for good behavior and mandated reducing an inmate's term of commitment by the amount of accumulated good time for parole eligibility purposes. Wolff, 418 U.S. at 546 n. 6. It also provided that good time reductions of an inmate's term could be forfeited or withheld by the head of the prison on the basis of an inmate's misconduct after the inmate "ha[d] been consulted regarding the charges of misconduct." Wolff, 418 U.S. at 546 n. 6.

Under a different statute, "flagrant or serious misconduct" could result in both forfeited or withheld good time credits, affecting the term of confinement, and disciplinary segregation affecting only conditions of confinement. Wolff, 418 U.S. at 546-47. Prison officials had adopted written regulations setting forth policies and procedures for controlling misconduct and imposing discipline. Wolff, 418 U.S. at 548-53.

The United States Supreme Court noted at the outset that, while an incarcerated person's "rights may be diminished by the needs and exigencies of the institutional environment, a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime." Wolff, 418 U.S. at 555. Thus, the protection afforded by the Due Process Clause extends to inmates of state prisons, but it can be limited by institutional needs and objectives. See Wolff, 418 U.S. at 556.

The Supreme Court observed that Nebraska had provided a statutory right to good time credits and had specified that such credits could be forfeited only as a sanction for serious misbehavior. Wolff, 418 U.S. at 557. On that basis, the Supreme Court concluded that Nebraska had created an interest of real substance "embraced within Fourteenth Amendment 'liberty'" which entitled Nebraska prison inmates to minimum due process procedures appropriate under the institutional circumstances to insure that the state-created right to good time was not abrogated arbitrarily. Wolff, 418 U.S. at 557.

The United States Court of Appeals for the Ninth Circuit recently applied the Sandin/Wolff "interest of real substance" approach to due process inquiries with regard to state-created rights in Gotcher v. Wood (9th Cir. 1995), 66 F.3d 1097. There, Norman Gotcher, a Washington prison inmate, alleged in a 1983 action that Washington Department of Corrections employees failed to afford him due process in prison disciplinary hearings; his claim was premised on an asserted liberty interest in receiving good time credits. Gotcher, 66 F.3d at 1098-99. The federal district court relied on the "mandatory language/substantive predicate" analysis in concluding that Gotcher did not have a liberty interest in receiving good time. See Gotcher, 66 F.3d at 1098, 1100.

On appeal, the Ninth Circuit reversed. It noted that Washington's statutes regarding good time credits were indistinguishable from those enacted in Nebraska and held by the Supreme Court in Wolff to create a liberty interest. Gotcher, 66 F.3d at 1100. Because the Supreme Court had abandoned the "mandatory language/substantive predicate" analysis in Sandin and returned to the Wolff principles, the Ninth Circuit held that the federal district court erred in concluding that no liberty interest in good time credits existed. Gotcher, 66 F.3d at 1100-1101.

Our holding in Remington that MSP inmates do not have a

liberty interest in good time credits predated Sandin and was premised on the "mandatory language/substantive predicate" analysis of state-created rights. See Remington, 844 P.2d at 52-53. In light of Sandin and Gotcher, it is clear that Remington must be, and is hereby, overruled insofar as it applied that analysis. As a result, we must determine whether Orozco had a liberty interest in good time credits under the Sandin/Wolff due process principles.

Section 53-30-105, MCA (1993), provided:

(1) The department of corrections and human services shall adopt rules providing for the granting of good time allowance for inmates employed in any prison work or activity. . . . The good time allowance shall operate as a credit on the inmate's sentence as imposed by the court, conditioned upon the inmate's good behavior and compliance with the rules made by the department or the warden.

. . . .

(2) In the event of . . . a violation of the rules prescribed by the department or warden, the inmate may be punished by the forfeiture of part or all good time allowances.

This statute mandated rules granting good time for work activity as a credit on an inmate's sentence. Consistent with this statute, the Department adopted Policy No. 505, which required that good time allowances provide a credit on the inmate's sentence as imposed by the court. The policy clarified when good time accrual begins and set forth the circumstances, including an increase in custody classification, which could result in the loss of the opportunity to earn, or a reduction of, good time credits. By these legislative and administrative actions, the State created a right to good time as a direct credit to inmates' sentences. As in Wolff, the good time provisions contained in both 53-30-105, MCA (1993), and Policy No. 505 directly affect the duration of inmates' confinement at the MSP. Applying the Sandin/Wolff due process analysis, we conclude that the State had created an interest of real substance sufficiently embraced within Fourteenth Amendment "liberty" so as to entitle Orozco to due process procedures appropriate under institutional circumstances. See Sandin, 115 S.Ct. at 2300; Wolff, 418 U.S. at 557. As a result, we hold that the District Court erred in determining that no liberty interest existed in this case.

The existence of a liberty interest giving rise to due process requirements is not dispositive, however, of the qualified immunity issue presently before us. As discussed above, our threshold inquiry in addressing qualified immunity is whether the due process right arising from Orozco's liberty interest in good time credits was clearly established at the time of the individual defendants'

conduct which gave rise to this action. See Boreen, 930 P.2d at 70. We hold that it was not.

We decided Remington in 1992 and held therein--on the basis of the Supreme Court's "mandatory language/substantive predicate" analysis--that Montana inmates do not have a liberty interest in good time credits. See Remington, 844 P.2d at 53. The classification hearing which resulted in Orozco losing the opportunity to earn additional good time credits, and which he alleges violated his due process rights, occurred on March 28, 1995. Remington was the controlling Montana case on Montana statutes and Department policies relating to good time on the date of Orozco's hearing. As of that date, then, no Montana case recognized a state-created due process liberty interest in good time credits.

Moreover, the Supreme Court did not decide Sandin, in which it returned to the Wolff "interest of real substance" principles, until June 19, 1995, nearly three months after Orozco's classification hearing. See Sandin, 115 S.Ct. at 2293. The Ninth Circuit followed with Gotcher in October of 1995. See Gotcher, 66 F.3d at 1097. Even assuming those cases interpreted statutes and policies identical to Montana's and determined on such bases that an interest of real substance in good time credits existed which gave rise to due process requirements before those credits could be withheld, the cases postdated the conduct of the individual defendants which allegedly violated Orozco's due process rights in the present case. We conclude, therefore, that the liberty interest in good time credits which gives rise to Orozco's due process rights here was not clearly established at the time of his classification hearing. As a result, we further conclude that the individual defendants are entitled to qualified immunity from liability for civil damages. See Boreen, 930 P.2d at 75. Accordingly, we hold that the District Court was correct in so concluding.

As previously mentioned, the District Court dismissed the entirety of Orozco's complaint--which sought not only money damages, but also declaratory and injunctive relief--pursuant to Rule 12(b)(6), M.R.Civ.P. The District Court correctly dismissed the Department from the entirety of Orozco's 1983 suit because it is an arm of the State and, therefore, not a "person" within the meaning of 1983. In addition, the District Court correctly dismissed the damage claim against the individual defendants based on qualified immunity. Given Orozco's liberty interest in accumulating good time credits, however, we conclude that the District Court improperly dismissed Orozco's complaint pursuant to Rule 12(b)(6), M.R.Civ.P., with regard to the declaratory and injunctive relief requested under 1983. See Loney, 905 P.2d at 160. As a result, it is necessary to remand for further consideration of remaining issues, including what "process" was

"due" Orozco before his opportunity to earn good time credits was withdrawn and whether Orozco received the process due him. These issues, insofar as they relate to Orozco's declaratory and injunctive relief claims, have not been addressed by the District Court because of the early stage at which the District Court dismissed the entirety of Orozco's complaint and the reasons underlying that dismissal.

For these reasons, we affirm in part, reverse in part and remand this case for further proceedings consistent with this opinion.

/S/   KARLA M. GRAY

We concur:

/S/   J. A.   TURNAGE
/S/   WILLIAM E. HUNT, SR.
/S/   JAMES C. NELSON