No. 98-062

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 91N

LEO L. JACOBSEN,

Plaintiff and Appellant,

v.

STATE OF MONTANA, BUTTE-SILVER BOW COUNTY,

MONTANA, ROBERT BUTOROVICH, DANIEL SKULETICH,

REED SCOTT, BUTTE-SILVER BOW COUNTY COUNCIL OF

COMMISSIONERS, as composed in 1989, Defendants A through Z,

all individually and jointly,

Defendants and Respondents.

APPEAL FROM: District Court of the Second Judicial District,

In and for the County of Silver Bow,

The Honorable James Purcell, Judge presiding.


COUNSEL OF RECORD:


For Appellant:


Kevin E. Vainio, Attorney at Law; Butte, Montana

Ed Yelsa, Attorney at Law; Anaconda, Montana


For Respondents:


Thomas M. Welsch; Poore, Roth & Robinson, P.C.; Butte, Montana

(for Butte-Silver Bow County)


James Scheier, Assistant Attorney General, Agency Legal Services Bureau;

Helena, Montana (for State of Montana, Daniel Skuletich, Reed Scott)

No

Decided: April 28, 1999

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

**¶1. Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.**

**¶2. Leo L. Jacobsen, former coroner for Butte-Silver Bow County, initiated this action by filing his complaint on March 3, 1994. He subsequently amended the complaint on June 10, 1994, alleging claims for malicious prosecution, intentional infliction of emotional distress, interference with economic advantage, a claim under 42 U.S.C. § 1983,** *respondeat superior***, and negligent prosecution. Jacobsen later added a claim under 42 U.S.C. § 1985. He named as defendants the State of Montana, two of its investigators, Butte-Silver Bow and its Council of Commissioners among others.**

**¶3. The District Court granted summary judgment in favor of the Butte-Silver Bow defendants in March 1997. While that motion was pending, Jacobsen served for the first time the State of Montana defendants. The State defendants then moved for summary judgment and, in response, Jacobsen sought leave to further amend his complaint as to the State defendants. On October 3, 1997, the District Court granted Jacobsen permission to amend his complaint and then granted the State defendants summary judgment.**

**¶4. On October 21, 1997, the court entered judgment on both orders of summary**

judgment from which Jacobsen appeals. The State defendants cross-appeal the District Court's October 3, 1997, order allowing Jacobsen to amend his complaint as to the State defendants. We affirm.

¶5. The following issues are dispositive of this appeal:

¶6. 1. Did Butte-Silver Bow County exercise a valid grant of authority when it appointed Assistant Attorney General John P. Connor, Jr., as Special Deputy County Attorney pursuant to Resolution 1196?

¶7. 2. Were Jacobsen's malicious prosecution claims time barred by a two-year statute of limitation?

¶8. 3. Are the respondents protected from Jacobsen's malicious and negligent prosecution claims on the basis of prosecutorial immunity?

¶9. 4. Did the District Court err in granting summary judgment in favor of the respondents on Jacobsen's tort claims?

¶10. 5. Did the District Court err in granting summary judgment in favor of the respondents on Jacobsen's civil rights claims?

¶11. 4. Should Jacobsen be required to pay his share of the costs of appellate mediation?

¶12. Since we are affirming the District Court's order granting summary judgment in favor of the respondents, we need not address the respondents' cross-appeal.

## FACTUAL BACKGROUND

¶13. Jacobsen was elected and served as coroner for Butte-Silver Bow County from November 1966 to October 1990. In 1988, County Commissioner Thomas Brophy initiated an investigation into several of Jacobsen's travel claims. Brophy presented the travel claims to the Butte-Silver Bow County Attorney for investigation. On December 6, 1989, at the request of the County Attorney, the Butte-Silver Bow Council of Commissioners passed Resolution 1196 to request the appointment and compensation of an attorney from the County Prosecutor Bureau of the Montana Department of Justice to assist in the investigation of and, if appropriate, the

prosecution of a claim against Jacobsen. Pursuant to the resolution, Assistant Attorney General John P. Connor, Jr., was appointed as Special Deputy County Attorney. The resolution also allowed Assistant Attorney General Matthew F. Heffron to act in place of Connor.

¶14. Nearly one year later, on October 5, 1990, Heffron filed a complaint against Jacobsen in Butte-Silver Bow Justice Court. Jacobsen was arrested pursuant to a warrant, then released on bond after spending three hours in jail. On October 16, 1990, Heffron obtained leave to file an information in the District Court.

¶15. On October 18, 1990, an information was filed in the Second Judicial District Court, Silver Bow County, charging Jacobsen with one felony count of theft, one felony count of filing false claims, five felony counts of fraudulently obtaining dangerous drugs by confiscating prescription drugs and medications of deceased individuals, and two misdemeanor counts of official misconduct. Jacobsen filed a motion to dismiss the information, which was denied. Jacobsen, thereafter, pled not guilty to all charges. The District Court suspended Jacobsen from his position as coroner pursuant to § 45-7-401(4), MCA.

¶16. On January 7, 1991, the case proceeded to trial. During the trial, the District Court dismissed several of the counts against Jacobsen and on January 11, 1991, the jury acquitted him on the remaining charges. The District Court ordered that Jacobsen be reinstated into his position as coroner and be paid retroactively for the three months he was suspended. One and one-half years later, Jacobsen sought re-election as coroner, but lost.

¶17. The parties disagreed whether the appeal and cross-appeal were subject to a Rule 54, M.R.App.P., mediation requirement. Nonetheless, on January 15, 1998, this Court ordered the parties to mediation. Mediation was held, but no resolution was reached. The mediator demanded that Jacobsen pay one-third of the mediation costs. Jacobsen paid this under protest, which he also appeals.

STANDARD OF REVIEW

¶18. On appeal from a summary judgment, this Court reviews a case *de novo* based on the same criteria applied by the district court. *See Stutzman v. Safeco Ins. Co.* (1997), 284 Mont. 372, 376, 945 P.2d 32, 34 (citing *Treichel v. State Farm Mut. Auto.*

*Ins. Co.* (1997), 280 Mont. 443, 446, 930 P.2d 661, 663). Thus,

[t]he movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove by more than mere denial and speculation that a genuine issue does exist. Having determined that genuine issues of material fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. [This Court] reviews the legal determination made by a district court as to whether the court erred.

*Stutzman*, 284 Mont. at 376, 945 P.2d at 34 (quoting *Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264-65, 900 P.2d 901, 903).

¶19. **Rule 56, M.R.Civ.P., controls the procedure to be followed in a summary judgment proceeding. Rule 56(e), M.R.Civ.P., requires that "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *See also HKM Associates v. Northwest Pipe Fittings, Inc.* (1995), 272 Mont. 187, 193, 900 P.2d 302, 305-06 (quoting *Koepplin v. Zortman Mining* (1994), 267 Mont. 53, 59, 881 P.2d 1306, 1309). We have stated that an opposing party "has an affirmative duty to respond by affidavits or other sworn testimony containing material facts that raise genuine issues; conclusory or speculative statements will not suffice." *Klock v. Town of Cascade* (1997), 284 Mont. 167, 174, 943 P.2d 1262, 1266 (quoting *Groshelle v. Reid* (1995), 270 Mont. 443, 447, 893 P.2d 314, 316).**

¶20. **As previously stated, our review of an order granting summary judgment is *de novo*. If we agree with the conclusions of the district court, we can affirm the district court's decision, if correct, regardless of its reasons. *See Norman v. City of Whitefish* (1993), 258 Mont. 26, 30, 852 P.2d 533, 535; *District No. 55 v. Musselshell County* (1990), 245 Mont. 525, 527, 802 P.2d 1252, 1253; *Jerome v. Pardis* (1989), 240 Mont. 187, 192, 783 P.2d 919, 922.**

## DISCUSSION

¶21. **At the outset, it is important that we note the status of the record that is before us. The respondents strenuously argue that many of the exhibits presented by the**

appellant to support his allegations are not properly authenticated, nor do his affidavits comply with the requirements of Rule 56(e), M.R.Civ.P. We agree that some of the appellant's allegations are not sufficiently supported in the record. We shall address the following issues on appeal without specifically noting the inadequacies of appellant's supporting documentation, but will conduct our review only giving consideration to what is properly authenticated in the record.

ISSUE 1

¶22. Did Butte-Silver Bow County exercise a valid grant of authority when it appointed Assistant Attorney General John P. Connor, Jr., as Special Deputy County Attorney pursuant to Resolution 1196?

¶23. Article XI, Section 6, of the Montana Constitution, provides that "[a] local government unit adopting a self-government charter may exercise any power not prohibited by this constitution, law, or charter." Section 7 of Article XI further provides that "[u]nless prohibited by law or charter, a local government unit may . . . transfer or delegate any function, power, responsibility, or duty of any officer to . . . the state."Jacobsen argues that Butte-Silver Bow County was prohibited from passing Resolution 1196 by § 7-4-2705, MCA. This statute states that

[e]xcept in counties of the first class, the board of county commissioners has the power, whenever in its judgment the ends of justice or the interest of the county require it, to employ or authorize the county attorney to employ special counsel to assist in the prosecution of any criminal case pending in such county or to represent said county in any civil action in which such county is a party.

The parties do not dispute that Butte-Silver Bow County is a first class county.

¶24. Jacobsen asserts that the first class county exclusion in § 7-4-2705, MCA, is based on the premise that first class counties already have full-time county attorneys who are compensated adequately to handle all criminal cases. He further argues that absent a source of authority other than Resolution 1196, the respondents failed to act within a proper legal scope.

¶25. In contrast, the respondents contend that § 7-4-2705, MCA, did not prohibit Butte-Silver Bow County from passing Resolution 1196. They cite *D & F Sanitation*

*Service v. City of Billings* (1986), 219 Mont. 437, 445, 713 P.2d 977, 982, in which we said that the authority of self-governed local governmental units can be limited only when expressly prohibited by law. *See also* § 7-1-102, MCA. The respondents argue that since § 7-4-2705, MCA, does not expressly prohibit a first class county from authorizing special counsel to assist in a prosecution, Resolution 1196 was a valid grant of authority. In the alternative, they argue that § 7-4-2705, MCA, must be liberally construed in light of any reasonable doubt of its meaning. They cite § 7-1-106, MCA, which states that "[e]very reasonable doubt as to the existence of a local government power or authority shall be resolved in favor of the existence of that power or authority." The respondents contend that a lack of an express prohibition on first class counties raises a reasonable doubt as to the scope of § 7-4-2705, MCA, which therefore must be resolved in favor of the existence of Butte-Silver Bow County's authority to pass Resolution 1196. Finally, the respondents suggest that § 7-4-2705, MCA, should be read as a permissive statute, instead of a prohibitive statute.

¶26. We agree with respondents. We recognize that § 7-4-2705, MCA, does not expressly limit the powers of first class counties and also that there is a reasonable doubt as to its scope which must be resolved in favor of Butte-Silver Bow County's power or authority. In *Tipco Corp., Inc. v. City of Billings* (1982), 197 Mont. 339, 344, 642 P.2d 1074, 1077, we acknowledged that statutes such as §§ 7-1-102 and -106, MCA, were enacted pursuant to an expansion of local government powers in Montana's 1972 Constitution. Today, § 7-4-2705, MCA, which has existed in essentially its same form since 1909, must be read in *pari materia* with §§ 7-1-102 and -106, MCA. As a result of this reading, our interpretation of § 7-4-2705, MCA, as a non-prohibitive statute is consistent with Article XI, Sections 6 and 7, of the Montana Constitution.

¶27. Thus, we conclude that § 7-4-2705, MCA, did not preclude Butte-Silver Bow County from lawfully passing Resolution 1196 to appoint Assistant Attorney General John P. Connor, Jr., as Special Deputy County Attorney.

ISSUE 2

¶28. Were Jacobsen's malicious prosecution claims time barred by a two-year statute of limitation?

¶29. Jacobsen was acquitted of the charges against him on January 11, 1991. More

than two years later, on July 27, 1993, he filed a notice of intent to sue, and on March 3, 1994, he filed his original complaint against the respondents. Applying a two-year limitation, as prescribed in § 27-2-203, MCA, for fraud and mistake, the District Court decided that Jacobsen's claims of malicious prosecution were time barred.

¶30. Jacobsen argues that malicious prosecution is controlled by a three-year rather than a two-year limitation period. He asks us to apply the three-year limitation set out in § 27-2-204(1), MCA, for general and personal injury tort actions.

¶31. Whether a two- or a three-year limitation applies depends on whether the tort of malicious prosecution is more appropriately characterized as a tort other than fraud or mistake. A cause of action for malicious prosecution has very different elements than a cause of action based on fraud or mistake. Therefore, we conclude that the three-year limitation found at § 27-2-204(1), MCA, for general and personal injury tort actions applies to Jacobsen's malicious prosecution claims.

¶32. Even though the District Court erred when it determined that the malicious prosecution claims were time barred, the claims must still fail based on the reasons set forth below.

## ISSUE 3

¶33. Were the respondents protected from Jacobsen's malicious and negligent prosecution claims on the basis of prosecutorial immunity?

¶34. Not only did Jacobsen allege that the respondents committed malicious prosecution, he separately alleged that the respondents were negligent in their prosecution. His argument on appeal is essentially that the respondents are not entitled to prosecutorial immunity against these claims, given Heffron's involvement in the investigative stages of his prosecution. He argues that the District Court failed to analyze the facts of this case under the guidelines set forth in two United States Supreme Court opinions, *Buckley v. Fitzsimmons* (1993), 509 U.S. 259, 113 S. Ct. 2606, 125 L. Ed. 2d 209, and *Burns v. Reed* (1991), 500 U.S. 478, 111 S. Ct. 1934, 114 L. Ed. 2d. 547.

¶35. The key question here is whether Heffron's investigatory activities were something other than prosecutorial or quasi-prosecutorial in nature. *Cf. Kelman v.*

*Losleben* (1995), 271 Mont. 156, 159, 894 P.2d 955, 957; *Smith v. Butte-Silver Bow County* (1994), 266 Mont. 1, 6-7, 878 P.2d 870, 873.

¶36. Jacobsen argues that Heffron's involvement in the investigative phase of the case was something other than prosecutorial or quasi-prosecutorial in nature. He asserts that Heffron became too involved with investigatorial functions when he directed the investigation, gathered evidence, interviewed witnesses, and extended limited immunity to Jacobsen's common law wife, Gayle Schumacher, in exchange for her testimony. Jacobsen also contends that Heffron pursued a prosecution against him even though Heffron knew there was not sufficient evidence to convict him.

¶37. Pursuant to the terms of Resolution 1196, Heffron was appointed to "assist in the investigation and prosecution" of Jacobsen. In its brief in support of summary judgment to the District Court, Butte-Silver Bow explained that the county commissioners simply relayed the information they had against Jacobsen to Heffron, who had the authority to exercise his sole discretion to determine what matters to investigate, whether to prosecute, and what charges would be filed based on the information his investigation uncovered. Similarly, the State argued that its investigators, Skuletich and Scott, simply reported the results of their investigation to Heffron who made the decision whether to prosecute.

¶38. The respondents attack the sufficiency of Jacobsen's supporting materials in opposition to their motions for summary judgment. Butte-Silver Bow argues that Jacobsen failed to comply with Rule 56(e), M.R.Civ.P., which provides that a party opposing summary judgment may not rest upon mere allegations or denials of his claim, but must respond with affidavits setting forth specific facts showing that there is a genuine issue for trial. Butte-Silver Bow contends that none of Jacobsen's exhibits submitted in opposition to summary judgment were properly authenticated or otherwise admissible.

¶39. The State makes similar arguments. In addition, the State points out that an affidavit of Jacobsen's counsel with attached documents from Heffron's files does not comport with Rule 56. The State directs us to the requirement in Rule 56 that the affiant must be a person through whom the exhibits could be admitted into evidence.

¶40. Our review of the exhibits discloses that Jacobsen did not sufficiently respond to the motions for summary judgment. Many of his exhibits were not properly

authenticated or were attached to an affidavit given by someone without knowledge and not competent to testify as to the facts. With regard to the attorney's affidavit of Jacobsen's counsel, it was likewise insufficient. In *Morales v. Tuomi* (1985), 214 Mont. 419, 424, 693 P.2d 532, 535, we stated that "an attorney's affidavit 'is admissible only to prove facts that are within his personal knowledge and to which he is competent to testify.'" (Quoting 10A Wright, Miller and Kane, <u>Federal Practice and Procedure</u> § 2738 (1983).)

¶41. We note that Jacobsen does not respond to these procedural arguments on appeal. In his opening brief, Jacobsen simply states, without support, that there is sufficient documentation as to show that Heffron actively investigated the case. Furthermore, Jacobsen did not respond to these arguments in a reply brief. Although it is true that the District Court did not engage in the type of functional analysis typically required in determining whether prosecutorial immunity applies, there was insufficient competent documentation for the District Court or this Court to establish a question of fact sufficient to defeat the respondents' motion for summary judgment.

¶42. Thus, we conclude that the District Court did not err in holding that the defense of prosecutorial immunity barred Jacobsen's malicious and negligent prosecution claims.

ISSUE 4

¶43. Did the District Court err in granting summary judgment in favor of the respondents on Jacobsen's tort claims?

<u>Intentional Infliction of Emotional Distress</u>

¶44. To recover on a claim for emotional distress, Jacobsen must show, among other factors, that he suffered from severe emotional distress caused by the respondents' intentional acts. *See Sacco v. High Country Independent Press* (1995), 271 Mont. 209, 238, 896 P.2d 411, 429. In his opening brief to this Court, Jacobsen asserts that the respondents acted intentionally to cause him emotional harm. He contends that the District Court erred when it determined that his claim was based on the alleged invalidity of Resolution 1196. Rather, he contends that the basis of his claim was the respondents' intentional acts related to their investigation and prosecution of him.

¶45. Butte-Silver Bow filed an affidavit of Robert McCarthy which established that all it did was adopt Resolution 1196 which placed full investigative and prosecutorial discretion in Heffron. Jacobsen did not file a counter-affidavit. The State argues that there are no allegations in the complaint which set forth liability on this count based on the conduct of the state employees. The State argues that Skuletich and Scott are immune from any liability on the basis of § 2-9-305, MCA, which provides immunity for state employees who act in the course and scope of their employment. The State further argues that it is immune from any liability which is derivative of the conduct of Heffron under the doctrine of prosecutorial immunity.

¶46. On the basis of the record before us, we conclude that the District Court did not err in granting the respondents summary judgment on this issue. Jacobsen did not set forth sufficient facts to support a claim for intentional infliction of emotional distress under the requirements of *Sacco.*

Interference with Economic Advantage

¶47. For Jacobsen to recover on a claim for interference with economic or business advantage, he must establish that the respondents acted with an unlawful purpose and that he suffered actual damages. *See State Board of Dentistry v. Kandarian* (1994), 268 Mont. 408, 416, 886 P.2d 954, 959. Jacobsen argues that he suffered economic and business damages when he was suspended from his position as coroner and when he failed to be re-elected as coroner. Although he acknowledges that he was paid retroactively after he was reinstated in his position as coroner, he contends that during the three months of his suspension he was without money to buy food, clothing, and other necessities. Jacobsen also alleges that his failure to be re-elected as coroner was due to the bad publicity he received in facing his prosecution.

¶48. Our review of the record supports the District Court's decision on this issue. The respondents acted with a lawful purpose in prosecuting Jacobsen. He was ultimately reinstated as coroner and paid retroactively after he was acquitted. We further conclude that any claim that he lost his subsequent election because of the respondents' actions is speculative.

*Respondeat Superior*

¶49. Under the doctrine of *respondeat superior*, an employer can be held vicariously

liable for the wrongful acts of its employees if those acts were committed in the scope of the employee's employment. *See Maguire v. State* (1992), 254 Mont. 178, 182, 835 P.2d 755 758. Jacobsen cites § 2-9-102, MCA, which states that "[e]very governmental entity is subject to liability for its torts and those of its employees acting within the scope of their employment or duties."

¶50. The District Court determined that Jacobsen could not establish as a matter of law that any of the respondents' employees committed wrongful acts that would result in liability. We agree.

ISSUE 5

¶51. Did the District Court err in granting summary judgment in favor of the respondents on Jacobsen's civil rights claims?

¶52. In order to successfully prosecute a claim under 42 U.S.C. § 1983, Jacobsen must establish that (1) there was a violation of his federal statutory or constitutional rights, (2) proximately caused (3) by the conduct of a "person" (4) acting under the color of state law. *See Orozco v. Day* (1997), 281 Mont. 341, 347, 934 P.2d 1009, 1012 (citing *Crumpton v. Gates* (9th Cir. 1991), 947 F.2d 1418, 1420). On appeal, Jacobsen alleges that he was deprived of his Fourth Amendment right to privacy and his Fifth Amendment right to due process of law.

¶53. A threshold question in any analysis of § 1983 claims is whether the respondents are considered "persons" under the requirements listed above. In *Orozco*, 281 Mont. at 347, 934 P.2d at 1012, we acknowledged that

municipalities and local government units are among those "persons" to whom 42 U.S.C. § 1983 applies. States and other governmental entities, on the other hand, are considered "arms of the state" and, as a result, they are not "persons" within the meaning of § 1983. The exclusion of states and "arms of the state" from the term "person" contained in § 1983 is based on the immunity from suit provided to states by the Eleventh Amendment to the United States Constitution.

(Citations omitted.) Under this authority, the State of Montana cannot be sued in Jacobsen's § 1983 action.

¶54. We next consider whether Jacobsen has a viable § 1983 claim against Butte-Silver Bow. In *Dorwart v. Caraway*, 1998 MT 191, ¶ 115, 966 P.2d 1121, ¶ 115, 55 St. Rep. 777, ¶ 115, we recognized that "[a] local governmental entity may be held liable under § 1983 only when it is shown that the entity itself caused the constitutional violation at issue through the implementation of a policy or custom of that governmental entity." For Jacobsen to impose liability on Butte-Silver Bow County, he must show that Butte-Silver Bow County had a policy that amounted to "deliberate indifference" to his constitutional right and that the policy was the "moving force behind the constitutional violation." *See Dorwart*, ¶ 115. The United States Supreme Court has explained that a policy can be a "statement, ordinance, regulation or decision officially adopted and promulgated" by the law-making body, or a custom or practice so widespread as to constitute a *de facto* policy. *Monell v. Department of Social Services* (1978), 436 U.S. 658, 690-91, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611, 635-36. In addition, a policy can be the result of a decision made by a supervisor or someone who has policy-making authority. *See Dorwart*, ¶ 115; *Pembauer v. Cincinnati* (1986), 475 U.S. 469, 483, 106 S. Ct. 1292, 1300, 89 L. Ed. 2d 452, 464-65. There is nothing in the record that would suggest that Butte-Silver Bow did anything which could reasonably be interpreted as policy in regard to Jacobsen's prosecution. The McCarthy affidavit established that Resolution 1196 was adopted for lawful and appropriate purposes. Jacobsen has not established any *de facto* policy sufficient to avoid summary judgment. There is likewise no one identified by Jacobsen who had policy-making authority who made a specific decision to retaliate against him. Jacobsen has not raised a material fact question to defeat summary judgment against Butte-Silver Bow for a civil rights violation.

¶55. Finally, we consider whether Jacobsen can sustain a § 1983 claim against Skuletich and Scott. The law protects State officials from being sued in their official capacities; however, Jacobsen also sues them in their individual capacities. *See Orozco*, 281 Mont. at 348, 934 P.2d at 1013. Nonetheless, Jacobsen's claim must fail here as well. Skuletich and Scott are entitled to qualified immunity unless Jacobsen can establish that they violated clearly established statutory or constitutional rights of which a reasonable person would have known. *See, e.g., Harlow v. Fitzgerald* (1982), 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396, 410. This has not been shown as a matter of law. Thus, we conclude the District Court did not err in granting summary judgment against Jacobsen on the § 1983 claims.

¶56. Jacobsen also asserts a claim under 42 U.S.C. § 1985. The District Court ruled

that for Jacobsen to recover under § 1985 he must have been deprived of a right protected by law and also be a member of either a suspect class or quasi-suspect class. Jacobsen does not set forth any arguments that would support a claim that he is a member of a suspect class.

¶57. Finally, Jacobsen argues that the respondents violated his rights under the Fourth and Fifth Amendments to the United States Constitution. Jacobsen seems to say that his Fourth Amendment rights were violated during an interview with his wife and that he was arrested without probable cause which amounts to an unreasonable seizure. Jacobsen's Fifth Amendment claim apparently is based on his allegation that he was wrongfully deprived of property, namely his loss of the coroner's position. The District Court ruled that the Fourth Amendment claim must fail because there was no showing that there was an intrusion into Jacobsen's reasonable expectation of privacy. It further ruled that the Fifth Amendment claim must fail because his coroner job was an elected office in which he had no property right. We conclude that the District Court properly granted summary judgment on these claims as well.

ISSUE 4

¶58. Should Jacobsen be required to pay his share of the costs of appellate mediation?

¶59. Jacobsen reminds us that the District Court granted him the right to appeal without prepayment of costs. However, the mediator demanded that Jacobsen pay one-third of the mediation costs, pursuant to Rule 54(d)(5), M.R.App.P., which states that "[t]he mediator's fee and incidental expenses shall be shared equally by the parties." Jacobsen argues that he should not have had to pay mediation costs under another provision of Rule 54(d)(5), M.R.App.P., which provides that "in cases involving money judgments of $5,000 or less, any mediator appointed by the clerk of the supreme court under subsection (d)(3) should serve pro bono." We note, however, that this was not designated as a pro bono appointment in the order of appointment, pursuant to Rule 54(d)(5), M.R.App.P.

¶60. We have previously stated:

The purpose of [Rule 54] is to provide the parties with another opportunity to resolve their

dispute without incurring the significant costs and time involved in the ordinary appeal process, as well as reduce this Court's caseload. To accomplish these goals the new provisions were designed to be, and are, self-executing. Otherwise, the caseload of the Court will not decrease, but may very well increase as the Court considers and rules upon motions which address the mediation process, such as motions to opt out of the mediation requirements, motions for substitution of mediators, extensions of time to file statements of position, and the myriad of other forms of relief that counsel may seek. Correspondingly, the parties will incur additional expense on appeal during this process. The result will be self-defeating and thwart the goals of the appellate mediation program. Consequently, this Court will not insert itself in the process except under unusual or extraordinary circumstances.

*Harwood v. Glacier Elec. Co-op., Inc.* (1997), 282 Mont. 38, 39, 939 P.2d 981, 981-82. Jacobsen does not present the type of unusual or extraordinary circumstances which require us to intervene.

**¶61. In conclusion, we affirm the District Court's summary judgment in favor of all the respondents, as well as the appellate mediator's requirement that Jacobsen pay his share of the mediation expenses.**

/S/ JIM REGNIER

We Concur:

/S/ J. A. TURNAGE

/S/ TERRY N. TRIEWEILER

/S/ WILLIAM E. HUNT, SR.

No

/S/ KARLA M. GRAY