**Anthel L. BROWN, Petitioner - Appellant,**

v.

**Mike MAHONEY, Warden, Respondent–Appellee.**

No. 02–35112.
D.C. No. CV–96–00066–TGN.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 7, 2003.

Decided Aug. 1, 2003.

Before REAVLEY,** TASHIMA, and PAEZ, Circuit Judges.

### MEMORANDUM ***

Anthel L. Brown and Dewey W. Coleman appeal the district court's denial of their petition for a writ of habeas corpus.[1] Because the petitioners cannot show that the state court decision denying them relief was contrary to or an unreasonable application of United States Supreme Court precedent, we affirm in part and dismiss in part.

### *Jurisdiction*

 A pro se appellant must personally sign the notice of appeal in order for the court to have jurisdiction to consider his claims.[2] In the present case, only petitioner Brown signed the Notice of Appeal. Coleman's failure to sign the Notice of Appeal means that the certificate of appealability (COA) could only have been granted on Brown's claims. Thus, we dismiss Coleman's appeal for want of jurisdiction.

 We also lack jurisdiction to consider Brown's ex post facto claim. Brown's notice of appeal was treated as a request for a COA pursuant to Circuit Rule 22–1(c),[3] and a motions panel of this court granted a COA on only one issue: "wheth-

---

1.  *See* 28 U.S.C. § 2254.

2.  *Elias v. Connett*, 908 F.2d 521, 522 n. 1 (9th Cir.1990); *Brady v. Smith*, 656 F.2d 466, 467 n. 1 (9th Cir.1981).

3.  "If the district court denies a certificate of appealability as to all issues, petitioner may, within thirty-five days of the district court's entry of its order denying a certificate of appealability, file in the court of appeals a

---

** The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

*** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by NINTH CIR. R. 36–3.

er the district court erred in concluding that petitioner does not have a due process liberty interest in the Montana Department of Correction's adoption of rules permitting inmates to acquire good-time credits for employment prior to July 1982." Review pursuant to a COA is limited to the issues identified therein.[4] Broadening the scope of the COA is governed by Circuit Rule 22–1(d).[5] If a petitioner seeks broader certification, he must file a motion in the Court of Appeals. It is of no consequence that the issue to be reviewed in this case was certified by the Court of Appeals rather than by the district court.[6] Once a motion for a COA is granted in part, the petitioner must move for broader certification to obtain review of uncertified issues. As Brown failed to do this, we lack jurisdiction to consider his ex post facto claims.[7]

## Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)[8] became effective on April 24, 1996 and applies to petitions for writs of habeas corpus filed after that date.[9] The petition in this case was filed August 27, 1996. Thus, our review is governed by the AEDPA.

Denials of petitions for writs of habeas corpus based on state law rulings are reversed only when the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[10]

Brown does not claim that the district court unreasonably interpreted the facts in light of the evidence. The only issue before the federal district court was one of law: whether the Montana Supreme

---

motion for a certificate of appealability along with a statement of reasons why a certificate should issue as to any issue(s). If no motion for a certificate of appealability is filed, the court of appeals will deem the notice of appeal to constitute a request for a certificate of appealability." NINTH CIR. R. 22–1(c).

4. *See* 28 U.S.C. § 2253(c)(2)-(3).

5. "If the district court denies a certificate of appealability in part, the court of appeals will not consider uncertified issues unless petitioner first seeks, and the court of appeals grants, broader certification. Petitioners desiring broader certification must file, in the court of appeals, a separate motion for broader certification, along with a statement of reasons why a certificate should be granted as to any issues(s) within thirty-five days of the district court's entry of its order denying a certificate of appealability...." NINTH CIR. R. 22–1(d).

6. *See* NINTH CIR. R. 22–1 advisory committee's note (making clear that Rule 22–1 applies "[t]o the extent a party wishes to ask the merits panel to broaden the scope of appeal beyond what was allowed by a motions panel of this court").

7. Brown argues that the ex post facto claim is inextricably bound up with his due process claim, and thus the court should consider both arguments. The record establishes, however, that Brown was never eligible for good-time credit for participation in self-help activities upon which he bases his ex post facto claim. Additionally, a decrease in the good-time allowance for participation in self-help programs does not affect whether Brown has a liberty interest in the Department of Corrections's (DOC) adoption of rules awarding good-time credit for prison work.

8. Pub.L. No. 104–132, § 107(c), 110 Stat. 1214, 1226 (1996).

9. *See Lindh v. Murphy,* 521 U.S. 320, 322, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

10. 28 U.S.C. § 2254(d).

Court's denial of Brown's state habeas petition involved an unreasonable application of, or was contrary to, clearly established federal law.

Brown concedes that the standard of review set forth in 28 U.S.C. § 2254(d)(1) is "technically applicable" but contends that we should apply a more lenient standard of review under *Killian v. Poole* because "no adjudication on the merits in state court was possible."[11] This is a curious position, as application of § 2254(d) is triggered only where state courts have adjudicated a petitioner's claims on the merits.[12] Thus, we have difficulty understanding how the statute can be "technically applicable" unless there was an adjudication on the merits in state court.

In any event, *Killian* is distinguishable. The *Killian* court determined that AEDPA's standard of review did not apply because the state refused to hold an evidentiary hearing on Killian's claims. Here, the Montana courts have held an evidentiary hearing and adjudicated the merits of Brown's claims. Thus, we may only re-

verse if the decision "was contrary to. or involved an unreasonable application of. clearly established Federal law. as determined by the Supreme Court of the United States."[13]

*Discussion*

"The Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison."[14] Thus, any such interest must arise from a state statute or regulation that limits the state's ability to deprive an inmate of a particular form of liberty.[15]

Brown contends that the 1965 and 1979 versions of the Montana good-time statute created a liberty interest in good-time credit for all prison work performed by state inmates.[16] Those statutes directed the Montana Department of Corrections (and its predecessor, the Department of Institutions) to "adopt rules and regulations providing for the granting of good time allowance for inmates employed in any prison work or activity."[17] The Mon-

---

11. 282 F.3d 1204, 1208 (9th Cir.2002).

12. *See* 28 U.S.C. § 2254(d) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted *with respect to any claim that was adjudicated on the merits* in State court proceedings unless [the decision was contrary to or an unreasonable application of clearly established federal law] ....") (emphasis added).

13. *Id.* § 2254(d)(1).

14. *Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

15. *See Sandin v. Conner,* 515 U.S. 472, 483–84, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)("States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to

give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.") (internal citations omitted); *see also Meachum v. Fano,* 427 U.S. 215, 226–227, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) (finding that inmates had no entitlement to procedural due process protections prior to transfer to a higher security facility because no state law stripped officials of the discretion to transfer prisoners).

16. *See* MONT.CODE ANN. § 53–30–105 (1979); MONT.CODE ANN. § 80–1905 (1965).

17. In 1979, the Montana Legislature recodified the 1965 version of the good-time statute as Montana Code Annotated § 53–30–105 but did not substantially change the statutory language upon which Brown bases his liberty interest claim. *Compare* MONT.CODE ANN. § 53–30–105 (1979) ("The department of institutions shall adopt rules providing for the granting of good time allowance for inmates

tana Supreme Court disagreed with Brown's interpretation of the statute because although the statute provides that the DOC must adopt rules, it grants the DOC "unfettered discretion" to determine the content of those rules.[18]

Brown argues that *Brown v. Mizner* relied on *Remington v. Department of Corrections and Human Services,*[19] which has since been overturned by the Montana Supreme Court in *Orozco v. Day.*[20] Nevertheless, in order for Brown to be entitled to a writ of habeas corpus he must demonstrate that the Montana Supreme Court's decision in *Brown v. Mizner* is somehow inconsistent with or an unreasonable application of United States Supreme Court precedent. This he cannot do.

The Supreme Court has repeatedly explained that inmates do not have liberty interests unless a state law or regulation creates an entitlement to a particular form of liberty, such as good-time credit or prison transfers. For instance, the Nebraska statutes at issue in *Wolff* required the chief executive officer of a correctional facility to reduce a well-behaved inmate's term of confinement by a particular num-

ber of months for each year served and only permitted the revocation or withholding of good-time credits in cases of serious misconduct.[21] Thus, the statute entitled the inmate to a certain amount of good-time credit and created a liberty interest in that credit so that the inmate was entitled to procedural due process before that credit was revoked. On the other hand, the inmate in *Meachum* was not entitled to due process protections when he was transferred to a higher security prison because Massachusetts law conferred no right to remain in the prison to which he was initially assigned.[22] In both cases, the Court examined whether the state law at issue entitled the inmate to a particular type of liberty; its conclusion that the statute did or did not entitle the inmate to that type of liberty determined the outcome of the case.[23]

■ The Montana good-time statute does not entitle inmates to good-time credit for prison work. It merely directs the DOC to adopt rules governing the granting of good-time credit. This conclusion is supported by the plain language of the statute. The statute does not require the

employed in any prison work or activity.") *with* MONT.CODE ANN. § 80–1905 (1965) ("The state department of institutions shall adopt rules and regulations providing for the granting of good time allowance for inmates employed in any prison work or activity.").

18. *Brown v. Mizner*, No. 95–045 (Mont. September 7, 1995) (unpublished).

19. 255 Mont. 480, 844 P.2d 50 (Mont.1992), *overruled by Orozco v. Day*, 281 Mont. 341, 934 P.2d 1009 (Mont.1997).

20. *Orozco* overruled *Remington* in light fo the 1995 United States Supreme Court decision in *Sandin v. Conner.*

21. *Wolff*, 418 U.S. at 546 n. 5, 94 S.Ct. 2963.

22. *Meachum*, 427 U.S. at 226, 96 S.Ct. 2532.

23. Prior to *Sandin*, the Supreme Court focused on whether prison regulations contained mandatory language and whether the substantive predicates of those regulations "created an enforceable expectation that the State would produce a particular outcome with respect to the prisoner's conditions of confinement." *See Sandin*, 515 U.S. at 480–81, 115 S.Ct. 2293. In *Sandin*, the Supreme Court returned to the due process principles established in *Wolff* and *Meachum* and directed courts to focus on the "nature of the deprivation" of liberty rather than the negative implications of mandatory language in prison rules and regulations. *See id.*, 515 U.S. at 486, 115 S.Ct. 2293 (explaining that a liberty interest exists where an inmate's interest in freedom from restraint is implicated because the state action "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life").

DOC to grant good-time credit for *all* prison work or activity, but for *any* prison work or activity. The word "any" means "one or some indiscriminately of whatever kind."[24] Thus, the DOC could have fulfilled the statutory command by adopting a rule that only kitchen workers could earn good-time credit. Only then would a liberty interest be created, because only then would the DOC be obliged to award any particular inmate goodtime credit. A liberty interest in good-time credit arises only when there are rules actually in force providing for the granting of good-time credit.

This interpretation is entirely consistent with the principles set forth in *Wolff* and *Meachum* and revisited in *Sandin*. The Montana good-time statute only contemplates the adoption of rules governing the granting of good-time credit. Without such rules having been adopted, there is no constitutionally significant liberty interest at stake. The chance that the DOC might have adopted rules that would have entitled Brown to good-time credit for the type of prison work he performed is simply too attenuated and speculative to invoke protections of the Due Process Clause.[25]

We recognize that the Montana Supreme Court has subsequently held that the 1993 version of the good-time statute *does* create a liberty interest in good-time credit.[26] At the time those cases were decided, the DOC had rules in place governing the granting of good-time credit, and the Montana Supreme Court held that the combination of the good-time statute and the rules created a due process liberty interest. Even if the Court understood the statute itself to create a liberty interest, those *state* court decision do not render *Brown v. Mizner* contrary to or an unreasonable application of clearly established *federal* law. Accordingly, we affirm the district court's dismissal of Brown's petition for a writ of habeas corpus. Costs taxed against the appellant.

DISMISSED IN PART AND AFFIRMED IN PART.

---

24. MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY at 53 (10th ed.2002).

25. *See Sandin*, 515 U.S. at 487, 115 S.Ct. 2293.

26. *See McDermott v. Mont. Dep't of Corr.*, 305 Mont. 462, 29 P.3d 992 (2001); *Campbell v. Mahoney*, 306 Mont. 45, 29 P.3d 1034 (Mont. 2001); *Orozco*, 281 Mont. 341, 934 P.2d 1009.