_____

No. 95-1117
_____

Steven R. Wycoff,                  *
                                   *
          Appellant,               *
                                   *  Appeal from the United States
     v.                            *  District Court for the
                                   *  Southern District of Iowa.
Debbie Nichols, Roger Lawson,      *
Charles Harper, Lt. Rewis,         *
                                   *
          Appellees.               *


_____

                    Submitted:  October 19, 1995

                        Filed:  September 5, 1996
                            _____

Before BOWMAN, HEANEY, and WOLLMAN, Circuit Judges.

                            _____

BOWMAN, Circuit Judge.


     Steven Wycoff, an inmate at the Iowa State Penitentiary (ISP) appeals
the adverse grant of summary judgment by the District Court[1] in his 42
U.S.C. § 1983 (1994) action against ISP officials.  We affirm.

     This is a prison discipline case.  While serving a life sentence
without the possibility of parole for first-degree murder, ISP inmate
Wycoff was disciplined for conduct relating to his handling of a jar of
peanut butter.  In March 1993, a prison official observed Wycoff carry a
paper bag into the cell of Sherman White, an ISP inmate.  The bag contained
a six-pound jar of peanut

_____

     [1]The Honorable Charles R. Wolle, United States District Judge
for the Southern District of Iowa.

butter, which Wycoff left in White's cell.  The same day Wycoff received notice that he had been charged with violating a number of ISP rules against bartering, complicity, disobeying an order, disruptive conduct, theft, unauthorized possession, and unauthorized presence.

Wycoff's case was forwarded to the ISP disciplinary committee, headed by an administrative law judge (ALJ).  Wycoff explained that he had found the jar of peanut butter while on duty collecting garbage and sweeping the cellhouse.  He stated that he went to visit White to ask him what he should do with his find.  The ALJ accepted Wycoff's explanation, and the disciplinary committee found that Wycoff had violated Rule 27 of the ISP disciplinary rules.  Wycoff was found not guilty of all of the other charges.  An inmate violates Rule 27(b) when the inmate: "conducts [himself] in a manner which disrupts or interferes with the security, tranquility, or orderly running of the institution." Wycoff v. Nichols, No. 4-94-CV-80038, Order at 3 (S.D. Iowa Nov. 30, 1994) (quoting ISP rules).  The disciplinary committee stated that its decision was based on the disruption caused when Wycoff decided to consult another inmate about the jar of peanut butter instead of contacting prison staff.  The disciplinary committee sentenced Wycoff to ten days restriction in a maximum security cell and invoked Wycoff's suspended sentence from a previous infraction.  Wycoff's suspended sentence was ten days disciplinary detention, loss of ninety days of good-time credit, and restriction in a maximum security cell for ninety days.

Wycoff filed an administrative appeal and supplemental appeal with the Warden.  Both appeals were denied.  Shortly after the Warden denied the appeals, Wycoff began serving his disciplinary sanction.  Wycoff then appealed his disciplinary decision to the Iowa Department of Corrections (IDOC).  Without stating the basis for its decision, the IDOC remanded the case to the ALJ.  After remand, the ALJ determined that Rule 27 did not apply and dismissed

Wycoff's case. Wycoff served forty-five days in administrative segregation before the case against him was dismissed. While Wycoff initially lost good-time credits for the ISP rule violation, after the ALJ's decision on remand all of Wycoff's good-time credits were restored.

Wycoff then brought this § 1983 action seeking damages against ISP officials, claiming that they violated his right to due process because (1) there was constitutionally insufficient evidence that Wycoff violated Rule 27, and (2) Rule 27 as applied to Wycoff was unconstitutionally vague. Defendants moved for summary judgment, arguing primarily that Wycoff had no due process claim because the administrative reversal of his ISP disciplinary report cured any alleged due process violations. Defendants later supplemented their previously filed motion for summary judgment, asserting that they were entitled to qualified immunity. Wycoff filed his own motion for summary judgment. The District Court granted summary judgment in favor of the prison officials. The District Court held that the prison officials did not violate Wycoff's due process rights and that, in any event, the administrative appeal, an integral part of the procedural protection afforded to Wycoff, resulted in a reversal that satisfied due process. The District Court did not address Wycoff's additional arguments regarding the application of Rule 27 to him or the prison officials' qualified immunity defense.

The District Court granted summary judgment in favor of defendants on the basis of Harper v. Lee, 938 F.2d 104 (8th Cir. 1991) (per curiam). In Harper, a prison disciplinary committee had found Harper guilty of violating prison rules and sentenced him to a period of administrative segregation, a period of disciplinary detention, and a loss of good time. Harper brought a § 1983 damages action against the prison officials, arguing that the committee's refusal to allow him to put certain log books in evidence violated his right to due process. Prison officials

subsequently remanded the case for rehearing to enable Harper to put the log books in evidence. At the rehearing, Harper introduced the log books, but the committee again found Harper guilty of violating prison rules. On appeal, we held that Harper had suffered no denial of due process because the remand and rehearing, as part of the due process protection to which he was entitled, rectified the initial denial of his right to put the log books in evidence. Id. at 105-06.

We review a grant of summary judgment de novo. Maitland v. University of Minn., 43 F.3d 357, 360 (8th Cir. 1994). We will affirm the judgment if the record shows that there is no genuine issue of material fact and that the prevailing party is entitled to judgment as a matter of law. Id.; see Fed. R. Civ. P. 56(c).

We are satisfied that the District Court was correct in its use of Harper as the legal basis for its decision. Like the inmate in Harper, Wycoff was charged with violating a prison rule for which he was disciplined. After the warden denied his appeals, Wycoff appealed to the IDOC, and the IDOC remanded the case against Wycoff to the ALJ for rehearing. After remand, the ALJ dismissed the case against Wycoff, stating that the rule under which Wycoff was charged did not apply to his case. In these circumstances, we find that the ISP's reversal of the case against Wycoff constituted part of the due process Wycoff received, and it cured the alleged due process violation based on the ISP disciplinary committee's initial decision to sanction Wycoff.

In any event, this case is controlled by Sandin v. Conner, 115 S. Ct. 2293 (1995),[2] which clearly bars Wycoff's claim that he is entitled to damages for time he spent in administrative segregation

---

[2] The Sandin opinion had not yet been issued at the time the District Court decided Wycoff's case, and thus the District Court had no opportunity to consider it.

prior to the ISP's reversal of the case against him.  In <u>Sandin</u> the Supreme Court held that an inmate has no protected liberty interest in remaining in the general prison population absent a showing of discipline in segregated confinement which amounts to atypical, significant deprivation. <u>Id.</u> at 2301.  <u>Sandin</u> fits this case and is an alternative basis upon which we deny Wycoff's claim for damages against the prison officials.

In <u>Sandin</u>, an inmate named Conner was convicted of numerous crimes, including murder, kidnapping, robbery, and burglary, for which he was serving an indeterminate sentence of thirty years to life in a Hawaiian prison.  While being transported from his cell to the program area, Conner was involved in an altercation with a prison official.  Conner was charged with three disciplinary infractions including physical interference with a correctional function, using abusive language and harassing a prison official.   He was found guilty, and was sentenced to thirty days disciplinary segregation in the Special Holding Unit for the physical obstruction charge, and four hours segregation for each of the other two charges to be served concurrent with the thirty days.

Conner sought administrative review of the decision against him; the decision ultimately was reversed and Conner's prison record was expunged. Conner then brought a § 1983 damages claim against the prison officials, claiming, among other things, a deprivation of due process in connection with his disciplinary hearing.  The Court held that

> Admittedly, prisoners do not shed all constitutional rights at the prison gate, but lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.  Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law. . . .

. . . We hold that Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.

Sandin, 115 S. Ct. at 2301 (citations and quotations omitted).

Central to the Court's analysis was the fact that Conner's stay in disciplinary segregation for thirty days was not a major disruption in his environment.  In reaching this decision, the Court stated that Conner's disciplinary segregation, with insignificant exceptions, "mirrored" conditions imposed on other inmates in administrative segregation and protective custody. Indeed, general conditions of confinement at the prison involved significant amounts of "lockdown" time even for inmates in the general population.  Moreover, the Court noted that Conner's placement in disciplinary segregation did not affect the duration of his sentence. Finding that nothing in the Hawaii state code required that a parole board deny parole in the face of a misconduct record, the Court rejected as too attenuated Conner's argument that a finding of misconduct in the case against him would alter his possibility of parole.  Therefore, the Court held that Conner did not have a liberty interest in remaining free of placement in administrative segregation.

In essence, Wycoff argues that he has a liberty interest in avoiding segregation.  We disagree.  It is well-established that the constitutional rights of prison inmates are legitimately curtailed as a result of their convictions for criminal offenses, see Hewitt v. Helms, 459 U.S. 460, 467 (1983); Wolff v. McDonnell, 418 U.S. 539, 555 (1974).  Like the inmate in Sandin, Wycoff has no liberty interest in avoiding administrative segregation unless the conditions of his confinement "present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." Sandin, 115 S. Ct. at 2301.  There is nothing in the record to suggest that the conditions of Wycoff's

administrative segregation were atypical of the ordinary conditions of confinement or that they rose to the level of a significant deprivation. Thus, Wycoff's case does not present an atypical or significant departure from the basic conditions of his life sentence.

Wycoff argues that because good-time credits are involved here, his case is distinguishable from Sandin where good-time credits were not at issue. While it is true that Sandin did not involve good-time credits, Wycoff's argument misses the mark. Wycoff has focused on a factual distinction that has no relevance to our legal analysis; all of Wycoff's good-time credits that were revoked by the ISP disciplinary committee have since been returned to him. Therefore, Wycoff has no claim as to the loss of good-time credits, and his claim relates only to the time he spent in administrative segregation. But Sandin teaches that Wycoff has no due process claim based on this somewhat more restrictive confinement because he has no protected liberty interest in remaining in the general prison population; his only liberty interest is in not being subjected to "atypical" conditions of confinement.[3]

We hold that Wycoff did not have a protected liberty interest in avoiding administrative segregation. The administrative segregation to which he was subjected as a result of the ISP disciplinary hearing was within the parameters of confinement normally to be expected by a person serving a sentence for criminal

---

[3]Since Wycoff lost no good-time credits, we need not and do not decide whether Wycoff's interest in his good-time credits would have been too attenuated to trigger due process concerns because he is serving a life sentence without the possibility of parole. We note that where a prisoner seeks to have good-time credits restored, he is required to exhaust his state remedies before proceeding in federal court. See Offet v. Solem, 823 F.2d 1256, 1257 (8th Cir. 1987).

activity.  Accordingly, his § 1983 damages action is precluded by <u>Sandin</u>.

For the foregoing reasons, the judgment of the District Court is affirmed.

HEANEY, Circuit Judge, concurring.

I reluctantly concur with the majority's opinion.  I am afraid that this case falls squarely within the holding of <u>Sandin v. Conner</u>, 115 S. Ct. 2293 (1995).  Although bound by that decision, I wish to voice my agreement with Justice Breyer's eloquent dissent as well as my hope that this court will contain <u>Sandin</u> to the facts presented in that case.  In this case, Wycoff was subjected to forty-five days in segregated confinement.  I simply disagree with the Supreme Court's characterization of this status as neither atypical nor a significant deprivation.  The simple fact that such confinement is used as punishment of inmates indicates the contrary.  Nevertheless, the Supreme Court has decided the issue and, therefore, I must concur.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.