# IN THE COURT OF APPEALS OF IOWA

———————————

No. 24-1129
Filed April 1, 2026

———————————

**Martin Ray Hiatt,**
Applicant–Appellant,

v.

**State of Iowa,**
Respondent–Appellee.

———————————

Appeal from the Iowa District Court for Polk County,
The Honorable Jeanie Vaudt, Judge.

———————————

**AFFIRMED**

———————————

Martin Ray Hiatt, Fort Dodge, self-represented appellant.

Brenna Bird, Attorney General, and Patrick C. Valencia, Deputy Solicitor
General, attorneys for appellee.

———————————

Considered without oral argument
by Greer, P.J., and Schumacher and Ahlers, JJ.
Opinion by Greer, P.J.

**GREER, Presiding Judge.**

In his postconviction-relief (PCR) application related to a prison disciplinary matter, Martin Hiatt asserted that his grievance with prison officials impacted his due process rights.[1] Hiatt requests that the court "define the parameters excluding administrative rules and policies that operate to by-pass the *Wolff*[2] mandatory due process components." More simply, he contends his property and liberty rights were violated by the discipline he received when he was reclassified to another, more secure unit without a proper disciplinary process. The State argues that Hiatt's disagreement over his inmate security classification "implicates neither a cognizable property nor liberty interest" requiring summary dismissal of the PCR application.[3] We affirm the dismissal of the PCR petition because Hiatt failed to establish a right to relief from his reclassification.

### I. Background Facts and Proceedings.

On July 6, 2022, the Fort Dodge correctional facility was on "lock-down." Only those prisoners who had worked that day were allowed

---

[1] Hiatt was serving a twenty-five-year sentence for three counts of sexual abuse in the second degree. In his PCR application, he also requested an award of $25,000 for his pain and suffering.

[2] *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974) (discussing prison disciplinary procedures involving denial of good-time credit, noting "the Due Process Clause does not require a hearing 'in every conceivable case of government impairment of private interest'" (citation omitted)).

[3] In Hiatt's reply brief he asserts that the State filed its brief untimely. Prior to filing his reply brief, Hiatt filed a motion to strike the State's brief for untimeliness. As the supreme court said in response to Hiatt's motion to strike: "Briefing deadlines are not jurisdictional, and the court may extend or shorten them. Iowa R. App. P. 6.1003(2)." The supreme court granted the State an extension to file its brief, and the State timely filed within that deadline.

showers. Hiatt, who had not worked, requested a shower, which he had not had for "roughly 56 hours." According to the note describing the incident, Hiatt showered but failed to mention the "whole truth" to staff that he had not worked that day. In the "generic note"[4] outlining his correctional violation, it was asserted that Hiatt "was seen for a level review today for manipulating staff," and Hiatt "took no responsibility for his actions." His consequence was to relocate to a more restrictive area after a panel of three prison officials reviewed the incident. On August 9, Hiatt filed a grievance, which the grievance officer noted was "non-grievable." Hiatt appealed. After reviewing the grievance appeal, the Iowa Department of Corrections (IDOC) executive officer determined that "this is a non[]-grievable matter in the fact that this is a formal classification/treatment appeal process," and as such, needed to be filed with the grievance officer within thirty days of the alleged incident, which time had passed. The grievance appeal was denied.

After Hiatt filed his pro se PCR application under Iowa Code section 822.2(1)(e) (2022),[5] the State moved for summary judgment. Hiatt argued his reclassification to a more secure area in the prison and the fact he

---

[4] According to Hiatt, the "Generic Note is for documentary use alone, not to implement disciplinary actions against inmates."

[5] Iowa Code section 822.2(1)(e) provides that:

1. Any person who has been convicted of, or sentenced for, a public offense and who claims any of the following may institute, without paying a filing fee, a proceeding under this chapter to secure relief:

. . . .

e. The person's sentence has expired, or probation, parole, or conditional release has been unlawfully revoked, or the person is otherwise unlawfully held in custody or other restraint.

was deprived of his job and property because of the reclassification, was done without due process. Hiatt argued that:

> it is DOC policy that generic notes are for documentary only. They are not used for disciplinary. That is their own policy. And policy also states to lose a level or have a job removal, you have to be found guilty by an ALJ and a major report. None of this ever happened for me. . . . To have a classification, you need a treatment director, a deputy warden, or the warden has to be present to be considered a classification team.

In response, the State asserted, "You can only file such an action [under section 822.2(1)(e)], . . . if you have, as a result of the actions of the staff in the prison, have, one, lost earned time, or, two, been substantially deprived of a liberty or property interest." It asserted the reclassification did not result in a deprivation of a cognizable liberty or property interest. The PCR court denied the PCR application, but as both Hiatt and the State agree, did so by applying incorrect facts.[6] Hiatt appeals.

## II. Standard of Review.

Our review of summary judgment rulings are "for correction of errors at law." *Nelson v. Lindaman*, 867 N.W.2d 1, 6 (Iowa 2015). Generally our review of PCR proceedings is for correction of errors at law. *Manning v. State*, 654 N.W.2d 555, 558–59 (Iowa 2002). "Constitutional issues, however, are reviewed de novo." *Smith v. State*, ___N.W.3d ___, ___, 2026 WL 545962, at *2 (Iowa 2026).

## III. Error Preservation.

The State asserts that Hiatt failed to preserve error on his arguments that the IDOC did not follow the *Wolff* due process parameters to allow him

---

[6] The district court mixed up the prison facilities in the ruling, but we do not find those errors impacted the legal implications of the issues presented here.

a disciplinary hearing and that he has a federal constitutional challenge. Without deciding this issue, we choose to address Hiatt's appellate arguments.

## IV. Analysis.

After Hiatt filed a PCR application in March 2024, seeking a classification decision related to his correctional facility status, the State moved for summary judgment to dismiss the claim. The State asserted that Hiatt failed to state a claim upon which relief can be granted as Hiatt's violation of restricted movement status and the change in classification to a different area of the prison as a punishment was not a violation of any recognized liberty or property interest. The State produced the IDOC policies related to reclassification. IDOC policy IS-CL-02 IV (C)(2)(h) states: "Classification decisions are not grievable. Each institution shall have written procedures for incarcerated individuals to appeal the classification decisions. Appeals beyond the institutional level are not allowed."

Under Iowa Code section 822.6(3), a PCR court may grant a summary judgment motion "when it appears from the pleadings, depositions, answers to interrogatories, and admissions and agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Smith*, ____ N.W.3d at ____, 2026 WL 545962, at \*3. Under that guidance, the district court determined that Hiatt failed to show that he suffered a substantial deprivation of his liberty or property interest, citing cases that show no liberty interest was implicated in an assignment to any particular prison. Thus, the district court determined that PCR was unavailable to Hiatt under the undisputed facts as presented. The court dismissed the PCR application.

5

We look to the two situations where a district court may review prison disciplinary proceedings through postconviction relief. *Tabor v. State*, 519 N.W.2d 378, 380 (Iowa 1994). "The first situation exists where the discipline results in a reduction of an inmate's good and honor time." *Wycoff v. Iowa Dist. Ct.*, 580 N.W.2d 786, 787 (Iowa 1998). That is not the situation that we have here. Moving to the second situation, it applies "where the prison discipline results in a substantial deprivation of the inmate's liberty or property interests." *Id.*; *Davis v. State*, 345 N.W.2d 97, 99 (Iowa 1984). From our review of the PCR application and record, this second situation forms the basis of Hiatt's PCR challenge.

Setting aside the question of whether Hiatt timely appealed his grievance below or whether procedures related to his grievance were followed, we look to whether the State is correct that the reclassification and resulting changes did not amount to a cognizable property or liberty interest. From that lens, we consider Hiatt's contention that his classification change is a greater degree of confinement than previously enjoyed and thus does constitute a substantial deprivation of a liberty interest. *See Davis*, 345 N.W.2d at 98–99. But, "[w]e have previously suggested transfers do not involve atypical or significant hardships on inmates in relation to the ordinary incidents of prison life." *See Wycoff*, 580 N.W.2d at 787–88.

We take some guidance from cases addressing similar arguments as those Hiatt advances. In *Smith v. McKinney*, 954 F.3d 1075 (8th Cir. 2020), the court granted summary judgment dismissing Smith's due process claim that he had a liberty interest in avoiding restrictive prison conditions. *Id*. at 1079–84. Smith was transferred to a higher security prison after a disciplinary action, that later was expunged from his record as he was found not to have violated the rules. *Id*. at 1077–78. In his PCR claim, Smith argued

"the decision to commit [him] to disciplinary detention and transfer him in the first instance was based on a disciplinary allegation and report that has since been expunged because a court held that there was not even 'some evidence' that [he] violated the prison rules." *Id.* at 1079. In dismissing the PCR claim, the court reasoned that "the Supreme Court has held that the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Id.* (cleaned up). Likewise, the court noted that prison administrators can transfer prisoners "for whatever reason or for no reason at all." *Id.* at 1080 (citation omitted).

Here, Hiatt could not show that his transfer to a higher security unit imposed any departure from the "ordinary incidents of prison life," which is the starting point for a due process challenge related to deprivation of liberty. *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995) (denying the due process claim after prison officials refused the prisoner's request to call witnesses at a disciplinary hearing where the issue was his segregation for misconduct); *see also Wilkinson v. Austin*, 545 U.S. 209, 223–24 (2005) (describing the characteristics of confinement that imposes "atypical and significant hardship" on an inmate). The focus of the liberty inquiry does not rest on the language of a particular regulation, but on the nature of the deprivation, as the former "encourage[s] prisoners to comb regulations in search of mandatory language on which to base entitlements to various state-conferred privileges." *Sandin*, 515 U.S. at 473; *see also Sanford v. Manternach*, 601 N.W.2d 360, 365 (Iowa 1999) (discussing the Supreme Court's shift in focus to the nature of deprivation).

As for Hiatt's claim that he suffered a deprivation of his constitutionally protected property interest, his argument fails. Hiatt does not have a property interest in any specific prison job nor does he have a

constitutional right to access any mattress topper within the prison walls. Our legislature had allowed for inmate work programs "in industries established and maintained in connection with the institutions by the director." *See* Iowa Code § 904.703(1) (noting the work program would be provided "for trustworthy inmates of state correctional institutions"). But Hiatt does not cite—nor could we find—any support for the argument that instituting work programs translates into a constitutionally protected property right. "The primary purpose of prison employment is inculcation or the reactivation of attitudes, skills, and habit patterns which will be conducive to prisoner rehabilitation." *Frederick v. Men's Reformatory*, 203 N.W.2d 797, 798 (Iowa 1973) (cleaned up). And prisoners do not even have a protected property right to prison wages. *State v. Love*, 589 N.W.2d 49, 51 (Iowa 1998) ("*The allowance is a gratuitous payment and is not a wage* arising out of an employment relationship." (emphasis in original) (cleaned up)); *see also* Iowa Code § 904.701(2) (same).

Like the prison job, Hiatt has not convinced us that his use of a mattress topper, which was not allowed after his transfer, is a cognizable constitutional right to property. *Hatten v. White*, 275 F.3d 1208, 1210 (10th Cir. 2002) (finding there is a difference between owning property and possessing property in prison and where the prisoner "was allowed to send the property he could not possess in prison to a place of his choosing," there was no deprivation of property).

After determining that Hiatt had "manipulated" prison staff into allowing him a shower, prison officials determined that Hiatt posed a risk in the lower-security unit in which he was placed because residing there carried with it "a lot of responsibility." Although the change in status meant that Hiatt could not continue working at his previous job as a protocol worker and

8

the rules at the higher-security unit meant he could not use a mattress topper, Hiatt did not identify any other restrictions or changes impacting him. In sum, we cannot find Hiatt has shown a property or liberty interest of constitutional dimension.

Finally, because a liberty interest was not identified by Hiatt, as was required to access the *Wolff* hearing process, his challenge to the process fails as well. *See Meachum v. Fano*, 427 U.S. 215, 225–26 (1976) (noting *Wolff* procedural protections were implicated when an inmate was deprived of good-time credits and declining to enter the day-to-day discretionary function of state prisons in decisions involving what prison to transfer a prisoner); *see also Sandin*, 515 U.S. at 477–82.

Thus, because the gist of the challenge relates to a reclassification of Hiatt's prison status to a higher security unit, where he could not work in his same job and had to send his mattress topper back home, it is undisputed that neither a property nor a liberty interest of Hiatt's was implicated. As a matter of law, as Hiatt failed to show entitlement to any PCR remedy, the district court correctly applied the law and granted the motion for summary judgment dismissing Hiatt's PCR claim.

**AFFIRMED.**