# IN THE COURT OF APPEALS OF IOWA

No. 21-0717
Filed May 11, 2022

IN THE INTEREST OF C.S.,
Minor Child,

A.D. and D.D., Guardians,
    Petitioners-Appellees,

R.S., Father,
    Respondent-Appellant.

_____

Appeal from the Iowa District Court for Scott County, Phillip J. Tabor, District Associate Judge.

A father appeals the denial of his petition to terminate C.S.'s guardianship, and the termination of his parental rights under Iowa Code chapter 600A (2020). **AFFIRMED IN PART, REVERSED IN PART, AND VACATED IN PART.**

Jeffrey L. Powell of Powell and McCullough, P.L.C., Coralville, for appellant father.

Barbara K. Wallace of Betty, Neuman & McMahon, P.L.C., Davenport, for appellees.

Rebecca C. Sharpe, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and Vaitheswaran and Chicchelly, JJ. Tabor, J., takes no part.

**VAITHESWARAN, Judge.**

A child's maternal aunt and uncle had been caring for the child for several months. They presented the child's father with an affidavit of parental consent to a proposed guardianship. They did not present him with the guardianship petition referenced in the consent form. The father signed the consent.

The relatives filed the consent in district court, together with a guardianship petition.[1] They did not serve the father with the petition or an original notice. Following a hearing at which the father did not appear, the district court granted the guardianship petition.

Several months later, the father moved to terminate the guardianship, alleging in part that he was not served with process. The relatives countered by filing a petition to terminate his parental rights. Following a hearing on both matters, the district court denied the father's motion to terminate the guardianship and granted the relatives' petition to terminate the father's parental rights. The father appealed both orders. The two matters were consolidated for appeal.

I.      *Denial of Father's Motion to Terminate Guardianship*

The father argues "[t]he underlying guardianship is invalid due to lack of personal service." His argument is essentially a collateral attack on the guardianship action precipitating the current litigation. *See Sanford v. Manternach*, 601 N.W.2d 360, 364 (Iowa 1999) ("A collateral attack upon a judgment is an attack made by or in an action or proceeding that has an independent purpose other than the impeaching or overturning of the judgment, although impeaching or overturning

---

[1] They also filed a consent obtained from the child's mother. She additionally consented to termination of her parental rights.

the judgment may be necessary to the success of the action." (citation omitted)). "[A] judgment is not subject to collateral attack except on jurisdictional grounds." *Id.* Lack of notice "goes to the heart of the district court's jurisdiction." *In re S.P.*, 672 N.W.2d 842, 845 (Iowa 2003). Absence of notice renders a judgment void and "is subject to attack at any time." *Id.* at 846.

Iowa Code chapter 232D (2020) governs minor guardianships.[2] The chapter authorizes the initiation of guardianship proceedings "by the filing of a petition." Iowa Code § 232D.301(1). The petition must list "[t]he name and address, to the extent known and ascertainable, of . . . [a]ny living parents of the minor." *Id.* § 232D.301(2)(d)(1). "Notice shall be served upon the minor's known parents listed in the petition in accordance with the rules of civil procedure." *Id.* § 232D.302(2); *see also id.* § 232D.106 ("The rules of civil procedure shall govern guardianship proceedings concerning a minor who is alleged to be in need of a guardianship except as otherwise set forth in this chapter.").

The rules of civil procedure require service of an original notice with a copy of the petition "by any person who is neither a party nor the attorney for a party to the action." Iowa R. Civ. P. 1.302(4). Service of the original notice is accomplished by delivery of "a copy to the proper person." Iowa R. Civ. P. 1.305. In the alternative, "A party or party's agent or attorney may take an acknowledgement of

---

[2] The chapter vests exclusive jurisdiction of a guardianship proceeding concerning a minor in the juvenile court. *See* Iowa Code § 232D.103. Before the guardianship petition was filed, the juvenile court filed a "bridge order" transferring jurisdiction of the child from the juvenile court to the district court following a child-in-need-of-assistance action. Pursuant to the bridge order, the child's mother was granted physical care of the child, subject to visits with the father.

service and deliver a copy of the original notice in connection therewith . . . ." Iowa R. Civ. P. 1.302(4).

As noted at the outset, the relatives did not personally serve the father with an original notice and guardianship petition, either before obtaining his consent to the proposed guardianship or at any time thereafter. They filed the petition and the father's consent, then made a single, unsuccessful attempt at personal service. While the relatives suggest the failure of personal service rests at the father's doorstep because he "lied about his address," the father in fact informed them that he had "since moved" from the address disclosed on his affidavit of parental consent and if he "need[ed] to be served," he would "get" them his "new residence address." There is no indication that the relatives contacted him or conducted an independent investigation to determine his new address. *See Dennis v. Christianson*, 482 N.W.2d 448, 452 (Iowa 1992) (rejecting the plaintiff's contention that the defendant evaded service by moving from Iowa to Arizona).

The relatives were also unsuccessful in their effort to have the father accept service. *See Rittgers v. West Bank*, No. 13-0816, 2013 WL 6686432, at *1, *4 (Iowa Ct. App. Dec. 18, 2013) (stating an attorney who was asked by petitioners over email if he would be willing to accept service on behalf of his client "had no duty to accept service"). Although they electronically transmitted the petition and original notice approximately two weeks after obtaining his signature on the consent form, they did not obtain "a signed, dated acknowledgment of service endorsed on the notice." Iowa R. Civ. P. 1.305(1).

Nor could electronic transmission of the original notice and petition alone constitute an effective substitute for personal service. A rule on electronic filings

forecloses that option. *See* Iowa Ct. R. 16.314(3) ("Original notices must be served upon the party against whom an action is brought in accordance with the Iowa Code and the Iowa Rules of Civil Procedure."); *see also* Iowa Ct. R. 16.314(3) cmt. ("Electronic service cannot be used to serve an original notice or any other document that is used to confer personal jurisdiction."); *In re Marriage of Rana*, No. 20-0513, 2021 WL 4889244, at *4 (Iowa Ct. App. Oct. 20, 2021) (citing rule and concluding a filing of a counterclaim on the electronic filing system "did not accomplish personal service").

The guardians nonetheless argue the father "had notice when he reviewed and signed the Affidavit of Consent and Guardianship Agreement" and "[a] hearing was not necessary to even enter the voluntary guardianship and it could have been done on the filings alone." To the contrary, the father had no notice of the petition and original notice when he signed the affidavit of consent. Although the affidavit represented that he "had read the Petition for Guardianship filed with this affidavit," the petition was not attached. Significantly, the petition would have apprised the father of the relatives' request for "an Order setting hearing on this petition and prescribing notice of this petition and notice of the hearing." And the original notice would have apprised him of his obligation to file a motion or answer within twenty days or risk a default judgment. Without those key documents, the father could not have "knowingly and voluntarily consen[ted] to the guardianship," as was required by the provision authorizing guardianships by parental consent. *See* Iowa

Code § 232D.203(2). The affidavit of consent, then, was not an effective substitute for personal service as required by Iowa Code section 232D.302(2).[3]

Nor could the father's signature on the consent and guardianship agreement constitute an appearance in the court proceeding and a waiver of the service requirement. The service requirement is predicated on a filed petition. *See In re J.F.*, 386 N.W.2d 149, 152 (Iowa Ct. App. 1986) (noting parent waived right to have dispositional order vacated by voluntarily appearing and acquiescing in the court's jurisdiction for ten months), *superseded by statute on other grounds as recognized in In re A.S.*, No. 17-0663, 2017 WL 2665119, at *1 n.1 (Iowa Ct. App. June 21, 2017); *see also* Iowa R. Civ. P. 1.302 ("A notice to the . . . respondent . . . against whom *an action has been filed* shall be served in the form and manner provided by this rule." (emphasis added)). As discussed, the petition was not filed when the relatives obtained the consent. And it is worth reiterating that the father did not appear at the guardianship hearing. *See Appearance*, Black's Law Dictionary (11th ed. 2019) cmt. (stating appearance signifies "act by which one against whom suit has been commenced submits [] to the court's jurisdiction" (quoting 4 Am Jur. 2d *Appearance* § 1, at 620 (1995))).

In sum, the guardianship petition underlying the father's motion to terminate the guardianship was void because the father received no notice of the petition by personal service as required by the minor guardianship statute and the rules of

---

[3] Notably, a proposed 2021 amendment to section 232D.302(2) did not dispense with service in accordance with the rules of civil procedure in cases of parental consent to a guardianship. The proposed amendment would have retained that requirement while clarifying there was no obligation to notify consenting parents of an entitlement to representation. *See* H.F. 834, 89th Gen. Assemb., Reg. Sess. (Iowa 2021).

civil procedure. The absence of personal service was not obviated by an acceptance of service or by an appearance. On our de novo review, we reverse the denial of the father's motion to terminate the guardianship and vacate the guardianship order. *See S.P.*, 672 N.W.2d at 848.

## II. Order on Relatives' Petition to Terminate Father's Parental Rights

The relatives filed their petition to terminate parental rights as "guardians and custodians" of the child. Based on our conclusion that the guardianship petition was void, the relatives could not rely on their status as guardians to support their petition to terminate the father's parental rights. *See* Iowa Code § 600A.5 (authorizing "[a] parent or prospective parent" or "custodian or guardian of the child" to "petition a juvenile court for termination of parental rights under [chapter 600A]"). But they could rely on their status as "custodians" of the child. *See id.*§ 600A.2(8)(defining "custodian" in part as "a stepparent or a relative within the fourth degree of consanguinity to a minor child who has assumed responsibility for that child"). They alleged they were the maternal aunt and uncle of the child and they had served as the child's caretakers for eleven months. That status provided the statutory hook to invoke chapter 600A. *See In re M.S.*, No. 20-0428, 2020 WL 4814168, at 2* n.2 (Iowa Ct. App. Aug. 19, 2020) ("noting the grandparents "appear[ed] to meet the definition of 'custodian' set forth in section 600A.2(8), as they [were] relatives within the fourth degree of consanguinity to the children and had 'assumed responsibility for' the children"). Accordingly, we will address the father's challenges to the district court's termination order.

### *A.    Judicial Estoppel*

The father argues, "The principle of [j]udicial [e]stoppel should have prevented termination by the [d]istrict [c]ourt, give[n] the existence of the . . . bridge order." In his view, "[T]he proper course would have been for [the] mother to petition to modify the [b]ridge [o]rder in Johnson County to authorize the guardianship."

We preliminary examine whether the father preserved error on his contention. He acknowledges "[t]he [d]istrict [c]ourt made no particular findings or reference to" his assertion of judicial estoppel as an affirmative defense but notes that he sought enlargement of the court's conclusions to address that defense. Although the district court summarily denied the enlargement motion, we conclude the father preserved error by requesting a ruling. *See In re O.M.F.*, No. 08-1739, 2009 WL 2952069, at *4 (Iowa Ct. App. Sept. 2, 2009) ("When a ruling fails to address an issue properly presented, a party must file a motion under Iowa Rule of Civil Procedure 1.904(2) to preserve error." (citation omitted)). But, even if he did not, the supreme court has stated, "[T]he doctrine of judicial estoppel may be raised sua sponte on appeal." *See In re Q.G.*, 911 N.W.2d 761, 770 n.4 (Iowa 2018) (citing *Tyson Foods, Inc. v. Hedlund*, 740 N.W.2d 192, 195 (Iowa 2007)).

That said, the judicial estoppel argument turns on whether the relatives used the proper vehicle to seek the guardianship underlying their petition to terminate his parental rights. Our conclusion that the guardianship petition must be vacated effectively resolves the father's contention that the relatives were judicially estopped from seeking a chapter 232D guardianship order in lieu of having the mother seek a modification of the bridge order.

In a related vein, the father asserts he "had no idea that signing his consent for the guardianship would create the sole basis for standing to terminate parental rights within six months of doing so." We agree the relatives' termination petition could not rest on the guardianship petition. But as discussed, the relatives had statutory standing as custodians.

### B.    Best Interests

The father next asserts, "Even if the Court were to agree that grounds supporting termination exist . . . , the termination must be reversed because termination is not in [the child's] best interest." He relies on *In re Q.G.*, 911 N.W.2d 761, 774 (Iowa 2018), in which the supreme court concluded the mother "did not show by clear and convincing evidence the best interest of the children [would] be advanced by termination of [the father's] parental rights." But the supreme court subsequently limited the holding of *Q.G.*, stating each case must be decided on its own facts. *See In re B.H.A.*, 938 N.W.2d 227, 233 (Iowa 2020) (noting the case did not evince the "exceptional circumstance" present in *Q.G.*). In assessing the facts, we look to the statutory best-interest definition, which "requires that each biological parent affirmatively assume the duties encompassed by the role of being a parent" by "demonstration of a genuine effort to maintain communication with the child," among other things. Iowa Code § 600A.1(2)

The child's aunt testified the father did not ask for a visitation schedule with the child. When she first assumed custody, he "mentioned going to a baseball game" with the child but "never followed up." She acknowledged the father contacted the child "once a week on average" for "the first three months," interacting with him via FaceTime. He only spoke to the child twice during the

fourth month and once during the fifth month. The father did not initiate electronic contact in the ensuing two months, although he saw the child twice—once during a visit the child's mother scheduled and the second time at the child's birthday party scheduled by the aunt.[4]

We recognize the father loved his child and had a strong desire to see him. At the same time, he admitted his electronic visits were limited. In his words, "[T]here is no denying, I wasn't always in direct contact. A lot of people did speak on my behalf." He also acknowledged that the child's aunt "never once denied [him] an actual conversation with" the child. On our de novo review, we conclude the father's limited communication and interaction with the child support the district court's conclusion that termination was in the child's best interests. *See B.H.A.*, 938 N.W.2d at 235 (citing "inconsistent pattern of visits"). We affirm termination of the father's parental rights to the child.

**AFFIRMED IN PART, REVERSED IN PART, AND VACATED IN PART.**

---

[4] The aunt extended invitations to the child's father and the child's paternal grandmother. Both attended.